STATE OF NORTH CAROLINA v. ELLIS WILLIAM FRAZIER

No. COA00-232

(Filed 6 March 2001)

## 1. Drugs— keeping dwelling for selling drugs—sufficiency of evidence

The trial court did not err by not dismissing a charge of intentionally keeping or maintaining a dwelling used for the keeping and/or selling of a controlled substance for insufficient evidence where Sloan (who identified herself as defendant's girlfriend) told Rogers (the owner of a motel) that she and defendant would stay in room 9; defendant sometimes paid the rent during the weeks they were there; defendant did not work regular business hours and was seen in the room around the middle of the day; Rogers and her husband received an anonymous letter stating that drugs were being sold in the room; defendant neither confirmed nor denied the allegations when confronted; defendant was found by officers in the bathroom, with his hands in the ceiling tiles where five rocks of crack cocaine were later found; a homemade crack pipe, a leather wallet containing $1,493 in cash, and a number of pagers were found in room 9; and defendant acted suspiciously on the day of the arrest.

## 2. Drugs— constructive possession—evidence sufficient

The trial court did not err by not dismissing a charge of possession of crack cocaine with intent to sell and deliver where the evidence was sufficient to support constructive possession. There was substantial evidence that defendant and his girlfriend shared possession of the motel room where the drugs were located and other incriminating evidence included defendant's lunge into the bathroom when officers entered the motel room and defendant placing his hands into the bathroom ceiling where the drugs were later found.

## 3. Constitutional Law— effective assistance of counsel—failure to object or move for continuance

The actions of defense counsel in a prosecution for intentionally keeping or maintaining a dwelling used for the keeping and/or selling of a controlled substance did not amount to ineffective assistance of counsel where defendant pointed to his counsel's failure to suppress drugs seized in a warrantless search,

but probable cause and exigent circumstances existed and the evidence was admissible; defense counsel's failure to object to the admissibility of defendant's statement concerning other drugs in his room did not amount to deficient representation because the statement was spontaneous and admissible despite the absence of Miranda warnings; and there was no indication of how the failure to move for a continuance impacted preparation for trial where defendant was arraigned and tried in the same week.

Appeal by defendant from judgments dated 4 November 1999 by Judge Gregory A. Weeks in Wake County Superior Court. Heard in the Court of Appeals 30 January 2001.

*Attorney General Michael F. Easley, by Special Deputy Attorney General W. Dale Talbert, for the State.*

*Ligon & Hinton, by Lemuel W. Hinton, for defendant-appellant.*

GREENE, Judge.

Ellis William Frazier (Defendant) appeals from judgments entered after a jury rendered verdicts finding him guilty of intentionally keeping or maintaining a dwelling used for the keeping and/or selling of a controlled substance and possession with intent to sell or deliver cocaine.

Defendant's case was called for trial on 3 November 1999. At that time, Defendant's counsel, John Oates (Oates), informed the trial court Defendant wished to be formally arraigned. Prior to arraignment, Defendant stated he was "physically unable to stand trial" because he had not spoken with his attorney concerning his case. Defendant was formally arraigned and given an opportunity to speak with Oates. After Defendant spoke with Oates, Oates stated he was ready to proceed and jury selection began on 3 November 1999. The State began presenting its evidence on 4 November 1999.

The State's evidence shows Selene Sloan (Sloan) entered the Roger's Motel (the Motel) in Cary on 26 January 1999 and requested to rent a room. Sloan told Barbara Rogers (Rogers), the owner of the Motel, she and her boyfriend, Defendant, were in the process of relocating to Cary and would stay at the Motel until they found an apartment. Sloan and Defendant were the only people staying in room 9 of the Motel (room 9) and neither appeared to work regular business

hours. Both Defendant and Sloan were seen in room 9 and around the Motel frequently at noontime. Sloan and Defendant stayed at the Motel approximately six or seven weeks and "[s]ometimes [Sloan] paid [the rent]. Sometimes a money order was dropped in. And on an occasion or two, [Defendant] paid [the rent]."

At some point during the stay of Defendant and Sloan at the Motel, Rogers and her husband received an anonymous letter indicating drugs were being sold in room 9. Rogers immediately called the Cary Police Department and an investigator came to the Motel and spoke with Rogers and her husband. Rogers and her husband later spoke with Defendant and informed him of the letter. Defendant neither denied nor confirmed he was selling drugs.

At trial, Detective Tracy Barker (Barker), of the Cary Police Department, testified he spoke with Rogers and her husband on 17 March 1999. Barker decided he would do a "knock and talk investigation," where he would "go up to [the] door, knock on [the] door, and ask the people in the . . . [motel] room . . . if [he could] come in and talk with them." Sloan allowed Barker to enter her motel room. As Barker entered room 9, he noticed Defendant lying on the bed. Defendant proceeded to get off of the bed and walk toward the bathroom. Barker asked Defendant if he had a problem with Barker "coming in and talking with them." Defendant did not respond, but continued walking toward the bathroom. Barker repeated himself and Defendant told Barker he could come into the room. As Defendant continued walking away from Barker, Defendant looked back at Barker in what Barker felt was "a suspicious sort of look." Barker asked Defendant to stop, however, Defendant continued walking and made a "lunge" behind a wall and shut the bathroom door. Barker "had an immediate feeling of fear . . . for [his] safety and the officers that were with [him]." Barker forced the bathroom door open and found Defendant "between the door and the tub . . . . He had his hands up in the ceiling tiles." Barker grabbed Defendant's arms, laid "him on the bed and secured him" and then secured Sloan.

After Defendant and Sloan were secured by Barker, Barker retrieved a step ladder and went into the bathroom to search it. Barker found a sandwich-sized plastic bag containing five individually wrapped rocks of crack cocaine located in the bathroom ceiling tiles. Barker conducted a "cursory search" of room 9 for weapons or contraband. Barker and other officers confiscated: "a homemade crack pipe"; a "crisp $20 bill that was folded lengthwise in half"; "a

number of pagers"; two cellular phones; and a leather wallet containing $1,493.00 in cash found on the side of the bed Defendant had lay on.

The State asked Barker if Defendant made any other statements while in room 9. Oates objected and the trial court excused the jury. Oates stated his objection was based on Barker's report that Defendant made "a statement saying . . . there were no other drugs in the room." Oates contended Defendant was in custody and, thus, Barker's questioning of Defendant was a violation of Defendant's Miranda rights. Oates attempted to conduct a *voir dire* examination of Barker, but the trial court interrupted Oates. The trial court inquired if Oates was attempting to make a motion to suppress and Oates answered in the affirmative. The trial court informed Oates "[N.C. Gen. Stat. §] 15A requires a written motion unless [Oates was] not aware that this evidence was in existence. And . . . assuming from [Oates'] comments . . . [he] had the report prior to trial." Oates indicated he did have the report prior to trial and he had the opportunity to file a written motion to suppress. The State moved to deny the motion to suppress and the trial court denied Defendant's motion to suppress.

Barker was permitted to testify Defendant advised Barker there were no other drugs in room 9. On cross-examination, Barker testified Sloan "appeared to be living or at least staying in the room at the time [Barker] came into [room 9]."

Officer Kenneth S. Quinlan (Quinlan) testified he went with Barker on 17 March 1999 because Barker "had a safety concern [and] . . . wanted an additional officer to back him up." As Defendant walked toward the bathroom, Defendant was looking at Barker and Quinlan in an "awkward" manner and Quinlan became concerned for their safety.

At the close of the State's evidence, Defendant made motions to dismiss both charges for insufficiency of the evidence, however, the motions were denied. Defendant presented no evidence at trial.

---

The issues are whether: (I) the State presented substantial evidence Defendant kept or maintained a place used for the keeping and/or selling of a controlled substance; (II) the State presented substantial evidence Defendant possessed cocaine; and (III) Oates provided Defendant with ineffective assistance of counsel.

I

**[1]** Defendant contends the trial court erred in failing to dismiss the charge of intentionally keeping or maintaining a dwelling used for the keeping and/or selling of a controlled substance because there was insufficient evidence Defendant kept or maintained room 9 for the purpose of keeping or selling a controlled substance. We disagree.

A motion to dismiss must be denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that [the] defendant is the perpetrator of the offense." *State v. Lynch,* 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin,* 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis,* 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998).

To obtain a conviction for knowingly and intentionally maintaining a place used for keeping and/or selling controlled substances under N.C. Gen. Stat. § 90-108(a)(7), the State has the burden of proving the defendant: (1) knowingly or intentionally kept or maintained; (2) a building or other place; (3) being used for the keeping or selling of a controlled substance. N.C.G.S. § 90-108(a)(7) (1999); *State v. Allen,* 102 N.C. App. 598, 608, 403 S.E.2d 907, 913-14 (1991), *rev'd on other grounds,* 332 N.C. 123, 418 S.E.2d 225 (1992).

A

*Keep or maintain a place*

Whether a person "keep[s] or maintain[s]" a place, within the meaning of N.C. Gen. Stat. § 90-108(a)(7), requires consideration of several factors, none of which are dispositive. *See Allen,* 102 N.C. App. at 608-09, 403 S.E.2d at 913-14. Those factors include: occupancy of the property; payment of rent; possession over a duration of time; possession of a key used to enter or exit the property; and payment of utility or repair expenses. *See id; see also State v. Rich,* 87 N.C. App. 380, 384, 361 S.E.2d 321, 324 (1987); *State v. Kelly,* 120 N.C. App. 821, 826, 463 S.E.2d 812, 815 (1995).

In this case, Sloan told Rogers that both she and Defendant would stay in room 9. During the six or seven weeks Defendant

stayed at the Motel, he sometimes paid the rent. Defendant did not work regular business hours and was seen in room 9 and around the Motel in the middle of the day. This evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" Defendant kept or maintained room 9.

### B

*Used for keeping and/or selling a controlled substance*

The determination of whether a building or other place is used for keeping or selling a controlled substance "will depend on the totality of the circumstances." *State v. Mitchell*, 336 N.C. 22, 34, 442 S.E.2d 24, 30 (1994). Factors to be considered in determining whether a particular place is used to "keep or sell" controlled substances include: a large amount of cash being found in the place; a defendant admitting to selling controlled substances; and the place containing numerous amounts of drug paraphernalia. *See id.*; *see also State v. Bright*, 78 N.C. App. 239, 240, 337 S.E.2d 87, 87-88 (1985), *disc. review denied*, 315 N.C. 591, 341 S.E.2d 31 (1986); *Rich*, 87 N.C. App. at 384, 361 S.E.2d at 322.

In this case, Rogers and her husband received an anonymous letter stating drugs were being sold in room 9. When Defendant was confronted with these allegations, he neither denied nor confirmed them. Defendant was found in the bathroom, with his hands in the ceiling tiles where five rocks of crack cocaine were later found. In addition, a homemade crack pipe, a leather wallet containing $1,493.00 in cash and a number of pagers were found in room 9. These circumstances, along with Defendant's suspicious behavior on the day of the arrest, "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" room 9 was used for keeping or selling drugs. Accordingly, Defendant's motion to dismiss the charge of maintaining a dwelling used for the keeping and/or selling of a controlled substance was properly denied.

### II

[2] Defendant was charged with possession with the intent to sell or deliver cocaine in violation of N.C. Gen. Stat. § 90-95(a)(1). Under this statute the State has the burden of proving: (1) the defendant possessed the controlled substance; and (2) with the intent to sell or distribute it. *State v. Carr*, 122 N.C. App. 369, 372, 470 S.E.2d 70, 72-73 (1996).

**STATE v. FRAZIER**

[142 N.C. App. 361 (2001)]

Defendant contends the trial court erred in failing to dismiss this charge because there is no evidence he possessed the drugs found in the dwelling. We disagree.

Possession may be either actual or constructive. *State v. Broome*, 136 N.C. App. 82, 87, 523 S.E.2d 448, 452 (1999), *disc. review denied*, 351 N.C. 362, 543 S.E.2d 136 (2000). "Constructive possession exists when a person," although not having actual possession of the controlled substance, "has the intent and capability to maintain control and dominion over [the] controlled substance." *State v. Neal*, 109 N.C. App. 684, 686, 428 S.E.2d 287, 289 (1993). Constructive possession of drugs is often shown by evidence the defendant has exclusive possession of the property in which the drugs are located. *State v. Alston*, 91 N.C. App. 707, 710, 373 S.E.2d 306, 309 (1988). It can also be shown with evidence the defendant has nonexclusive possession of the property where the drugs are located; provided, there is other incriminating evidence connecting the defendant with the drugs. *Id.*

In this case, there is substantial evidence Defendant, along with Sloan, shared possession of the room where the drugs were located. Other incriminating evidence, connecting Defendant with the drugs, includes his "lunge" into the bathroom and the placing of his hands into the bathroom ceiling, where the drugs were later found. This evidence is therefore sufficient to support the conclusion Defendant had constructive possession of the drugs in question. Accordingly, Defendant's motion to dismiss the charge of possession with intent to sell or deliver cocaine was properly denied.

### III

**[3]** Defendant argues in his brief to this Court that Oates' actions amounted to ineffective assistance of counsel. Defendant cites Oates' failure to: (1) move to suppress the drugs seized from room 9; (2) move to suppress statements made by Defendant prior to trial; and (3) assert Defendant's right not to be tried during the same week of arraignment.

A strong presumption exists that a counsel's conduct falls within the range of reasonable professional assistance. *State v. Mason*, 337 N.C. 165, 177-78, 446 S.E.2d 58, 65 (1994). In order to substantiate a claim for ineffective assistance of counsel, a defendant must show that "his counsel's representation was deficient and that there is a reasonable possibility that, but for counsel's inadequate representa-

tion, there would have been a different result." *State v. Piche*, 102 N.C. App. 630, 638, 403 S.E.2d 559, 564 (1991). If this Court "can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different," we do not determine if counsel's performance was actually deficient. *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985). A counsel's failure to object to evidence which is in fact admissible does not amount to deficient representation. *See State v. Lee*, 348 N.C. 474, 492-93, 501 S.E.2d 334, 346 (1998).

A

*Failure to suppress evidence*

Defendant argues the warrantless search of room 9 violated his constitutional rights and, thus, his counsel's failure to move to suppress the drugs amounted to ineffective assistance of counsel. We disagree.

A warrantless search may be conducted if "probable cause exists to search and the exigencies of the situation make search without a warrant necessary." *State v. Mills*, 104 N.C. App. 724, 730, 411 S.E.2d 193, 196 (1991). Probable cause to search for controlled substances is established if "a reasonable person acting in good faith could reasonably believe that a search of the defendant would reveal the controlled substances sought which would aid in his conviction." *Id.* at 730, 411 S.E.2d at 196. This Court, in reviewing whether probable cause exists, may consider the following nonexclusive factors: the defendant's suspicious behavior; flight from the officer or the area; and the officer's knowledge of defendant's past criminal conduct. *See id.* at 729, 411 S.E.2d at 196 (factors to consider to determine if probable cause exists to arrest).[1] In addition, an exigent circumstance is found to exist in the "presence of an emergency or dangerous situation," *State v. Guevara*, 349 N.C. 243, 250, 506 S.E.2d 711, 716 (1998), *cert. denied*, 526 U.S. 1133, 143 L. Ed. 2d 1013 (1999), and may include: a suspect's fleeing or seeking to escape, *id.*; possible destruction of a controlled substance, *see Mills*, 104 N.C. App. at 731, 411 S.E.2d at 197; and "the degree of probable cause to believe the sus-

---

1. In considering whether evidence is present to create probable cause, "none of these factors alone would be sufficient to establish probable cause." *Mills*, 104 N.C. App. at 729, 411 S.E.2d at 196. These factors must be considered in their totality, "based upon the practical considerations of everyday life." *Id.*

STATE v. FRAZIER

[142 N.C. App. 361 (2001)]

pect committed the crime involved," *State v. Allison*, 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979).

In this case, the evidence prior to the search of room 9 shows: as the officers entered the room, Defendant proceeded to get off of the bed and walk away from the officers; Defendant did not respond to Barker's inquiry of whether or not Defendant had a problem with Barker coming into room 9 and talking with him and Sloan, until Barker asked Defendant a second time; and Defendant gave Barker "a suspicious sort of look" and then made a "lunge" behind a wall and shut the bathroom door. This evidence establishes probable cause to search Defendant because a reasonable person, acting in good faith, could believe a search of Defendant would reveal the presence of a controlled substance.[2] Likewise, exigent circumstances also existed in this case. Defendant tried to flee from the officers, there was a danger the controlled substance could be destroyed, and there was probable cause to believe Defendant committed a crime. Accordingly, probable cause and exigent circumstances existed sufficient to conduct a warrantless search of Defendant, and, thus, because the evidence was admissible, Oates' failure to move to suppress the evidence did not amount to deficient representation.

B

*Defendant's statement*

Defendant argues his statement there were no other drugs in room 9 was made during a custodial interrogation in violation of his Miranda rights. We disagree.

A defendant must be given Miranda warnings before he is subjected to custodial interrogation.[3] *State v. Lipford*, 81 N.C. App. 464, 468, 344 S.E.2d 307, 310 (1986). "Spontaneous statements made by an individual while in custody are admissible despite the absence of *Miranda* warnings." *Id.*

---

2. The anonymous letter, standing alone, without some other "indicia" of reliability or form of corroboration, is not a sufficient basis to establish probable cause in this case. *See Florida v. J.L.*, 529 U.S. 266, 269, 146 L. Ed. 2d 254, 259 (2000) ("[a]nonymous tips . . . are generally less reliable than tips from known informants and can form the basis for reasonable suspicion only if accompanied by specific indicia of reliability"); *see also State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000) ("an anonymous tip can form the basis of reasonable suspicion as long as there is sufficient indicia of reliability either from the tip alone or after police corroboration").

3. Because the State concedes in its brief to this Court Defendant was in custody for purposes of Miranda, we need only address whether Defendant's statement was made as the result of an "interrogation."

In this case, Defendant stated, after he had been secured and after the officers had conducted a search of the room, that there were no other drugs in room 9. There is no evidence from the record Defendant's statement was made in response to any question posed by the officers. Accordingly, Defendant's statement appeared to be a spontaneous statement, not made in response to the officers' prompting, and, thus, is admissible despite the absence of Miranda warnings. Because Defendant's statement is in fact admissible, Oates' failure to object to the admissibility of the statement does not amount to deficient representation.

C

*Arraignment*

"When a defendant pleads not guilty at an arraignment[,] . . . he may not be tried without his consent in the week in which he is arraigned." N.C.G.S. § 15A-943(b) (1999). "[I]t is a general rule that a defendant may waive the benefit of statutory or constitutional provisions by express consent, failure to assert [the benefit] in apt time, or by conduct inconsistent with a purpose to insist upon [the benefit]." *State v. Gaiten*, 277 N.C. 236, 239, 176 S.E.2d 778, 781 (1970). If a defendant fails to assert the right guaranteed by N.C. Gen. Stat. § 15A-943(b) by seeking a continuance of his trial, "he waive[s] his statutory right not to be tried the week in which he was arraigned." *State v. Styles*, 93 N.C. App. 596, 602, 379 S.E.2d 255, 259 (1989).

Defendant argues Oates' failure to move for a continuance in his case resulted in Defendant waiving his statutory right under section 15A-943(b), and, thus, amounted to ineffective assistance of counsel. Defendant contends additional time would have aided in his preparation for trial and "would have enabled counsel to competently advise [D]efendant with regard to his options," including moving to suppress Defendant's statement and moving to suppress the controlled substance. We disagree. Defendant has not indicated to this Court in what manner he was unprepared for trial, how additional time would have aided in his preparation, or what options Oates failed to explain to Defendant. Absent some indication of how the failure to move for a continuance impacted Defendant's preparation at trial, there is no reasonable possibility there would have been a different result at trial. Likewise, because we have held in Parts III (A) and (B) of this opinion that Oates' failure to move to suppress the evidence seized from room 9 and to suppress Defendant's statement did not amount to deficient representation, there is no reasonable possibility, absent

Oates' failure to request a continuance and then make motions to suppress, a different result would have been reached at trial.

No error.

Judges TYSON and JOHN concur.