STATE OF NORTH CAROLINA v. MICHAEL GEORGE FULLER, Defendant

No. COA08-589

(Filed 21 April 2009)

**1. Appeal and Error— preservation of issues—alternate basis—failure to cross-assign error**

Although the State contends defendant lacks standing under the Fourth Amendment to challenge the seizure of evidence in a drug case, this issue was not properly preserved for appellate review because: (1) the trial court did not deny defendant's motion to suppress on this ground; and (2) the State did not cross-assign error to the court's failure to do so as required by N.C. R. App. P. 10(d).

**2. Search and Seizure— warrantless entry into mobile home to pursue defendant—motion to suppress evidence—exigent circumstances**

The trial court did not err in a drug case by denying defendant's motion to suppress evidence seized after officers' warrantless entry into a mobile home in pursuit of defendant because exigent circumstances existed justifying the warrantless entry where: (1) the officers had probable cause to arrest defendant based on an outstanding warrant; (2) two detectives were aware that defendant had absconded from his probation violation hearing a month earlier and thus was a flight risk, that defendant was previously conviction for armed robbery as well as his other narcotics convictions and assaultive behavior, and that defendant was normally armed; and (3) the detectives saw defendant run inside the mobile home after law enforcement announced their presence, and from the totality of circumstances the officers reasonably believed that a dangerous situation existed for them and the remaining occupants of the mobile home.

**3. Drugs— trafficking in cocaine by possession—possession with intent to' sell or deliver cocaine—possession of drug paraphernalia—constructive possession—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charges of trafficking in cocaine by possession, possession with intent to sell or deliver cocaine, and possession of drug paraphernalia because the State presented sufficient evi-

dence of constructive possession of cocaine and the drug paraphernalia, and there was other incriminating evidence including that: (1) defendant was occupying the mobile home even though it was without permission; (2) after the officers announced their presence, defendant fled to the back bedroom where he was found with white powder on his forearms and wrists; (3) defendant made statements that suggested he had just disposed of the cocaine; (4) the officers found drug paraphernalia in the kitchen, more than 50.8 grams of cooked crack cocaine in a kitchen drawer, and $2,420 in $100 and $20 bills on defendant's person; and (5) none of the three other people occupying the trailer when the officers arrived had any residue, money, contraband, or paraphernalia on them, and none had left the living room.

4. **Firearms and Other Weapons— possession of firearm by felon—constructive possession—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of possession of a firearm by a felon even though defendant contends there was insufficient evidence that he was in constructive possession of a handgun because: (1) in addition to the fact that defendant was found in the same room with the gun and the evidence regarding the drug-related charges, the handgun itself was not sitting out in the open where anyone could have access to it, but was instead tucked under the mattress of the bed near where a person's head would be; (2) defendant's shoes were found right next to that bed; and (3) while there were indications that defendant was residing in the trailer at the time of the search given the constant presence of his car and the finding of personal papers, there was no indication that anyone else was residing in the trailer once the tenant left.

5. **Drugs— trafficking in cocaine by manufacturing—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of trafficking in cocaine by manufacturing because the evidence tended to prove that: (1) defendant was occupying the trailer at 212 Briar Creek Park Lane; (2) it was defendant's solo efforts to dispose of cocaine upon the arrival of the officers; (3) defendant would have had to run through the kitchen where drug paraphernalia was located in order to reach the bathroom where the cocaine was apparently flushed; and (3) defendant carried on his person $2,420 in $100 and $20 bills.

**6. Drugs— maintaining a dwelling for purpose of keeping or selling controlled substance—sufficiency of evidence**

The State's evidence was insufficient to support a charge of "maintaining" a dwelling for the purpose of keeping or selling a controlled substance, and this conviction is reversed, because: (1) the State presented no evidence that defendant paid the rent; (2) the State presented no evidence that defendant paid the utilities for the mobile home, paid for any repairs, made any repairs, or otherwise took responsibility for the mobile home; and (3) at most the evidence suggested that defendant occupied the mobile home for approximately two months. The case is remanded for resentencing as to the possession of cocaine with intent to sell or deliver conviction since it was consolidated with this erroneous conviction.

Appeal by defendant from judgments entered 26 February 2008 by Judge Charles H. Henry in Onslow County Superior Court. Heard in the Court of Appeals 19 November 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Jay L. Osborne, for the State.*

*Geoffrey W. Hosford for defendant-appellant.*

GEER, Judge.

Defendant Michael George Fuller appeals from his convictions of trafficking in cocaine by possession, trafficking in cocaine by manufacturing, possession of drug paraphernalia, possession of cocaine with intent to sell or deliver ("PWISD"), intentionally maintaining a dwelling for the purpose of keeping or selling cocaine, and possession of a firearm by a felon. On appeal, defendant argues that the trial court erred in denying his motion to suppress and his motion to dismiss.

With respect to the motion to suppress, defendant contends that the officers violated the Fourth Amendment when they entered the mobile home without a search warrant in order to arrest him pursuant to a pending warrant for his arrest. We hold that the trial court's unchallenged findings of fact in its order denying the motion establish that exigent circumstances existed, justifying the warrantless entry. The trial court, therefore, did not err in denying the motion to suppress.

As for the motion to dismiss, the State presented substantial evidence to support each charge with the exception of intentionally maintaining a dwelling for keeping or selling controlled substances. As to the latter charge, although the State's evidence indicates that defendant may have been occupying the mobile home without permission for a limited period of time, the record contains no evidence to support a finding that he "maintained" the mobile home. Accordingly, we reverse that conviction. Because the trial court consolidated that conviction with the PWISD conviction for purposes of sentencing, we remand for resentencing on the PWISD conviction.

### Facts

The State's evidence tended to show the following facts. In 2003, defendant was convicted of possession of cocaine and placed on supervised probation in Carteret County. On 5 June 2006, defendant was present for a parole violation hearing during which the trial court ordered an immediate drug test. After testing positive for cocaine, defendant failed to return to the hearing, and the court issued a warrant for defendant's arrest.

The Onslow County Sheriff's Department, which was already investigating defendant for drug trafficking, received a copy of defendant's arrest warrant and photographs of defendant. By searching DMV records, the Sheriff's Department learned that defendant drove a black Dodge Charger. Detective Robert Ides spotted a black Dodge Charger leaving a fast food restaurant around 7:00 p.m. on 12 July 2006. Ides followed the Charger and confirmed that it was defendant's car. When deputies stopped the Charger, defendant was not in the car, but one of the occupants indicated that defendant could be found at 212 Briar Creek Park Lane.

Detective Ides, along with Detective Jack Springs, other sheriff's deputies, and defendant's probation officer went to that address. Ides approached the front door of the mobile home located at the address while other officers went around to the back door. Ides could see into the trailer through a gap in the blinds and recognized defendant sitting on the couch. There was also another man and two women; they appeared to be playing dominoes. When Ides knocked on the door, someone inside asked who was there, and Ides responded: "Sheriff's Department." Through the blinds, Ides saw defendant stand up and run to the back of the trailer out of Ides' field of view. Ides yelled to the other deputies: "[H]e's running."

Ides told the man that answered the door that they were looking for defendant and asked where he had gone. The man told Ides that he did not know what Ides was talking about and that defendant was not there. Ides told the man that he had seen defendant inside and that they were going to come in to arrest him. The deputies entered the mobile home and began searching for defendant. They found defendant in the back master bedroom, standing on the far side of the bed, near the door to an adjoining bathroom.

While handcuffing defendant, Springs saw white powder on defendant's forearms and wrists and all over the bathroom. After reading defendant his *Miranda* rights, Springs asked him what all the white powder was. Defendant responded: "If you don't have my shit, then you can't charge me with shit." Suspicious that defendant had been trying to dispose of cocaine, Springs went into the bathroom, and defendant stated: "Too bad the shit's gone, huh' " Springs still saw white powder in the sink, on the counter, on the floor, on the toilet, and in the toilet. The white powder looked like cocaine in the form "just before they're about to cook it." The deputies field tested the white powder, and based on the field test, the deputies "froze" the scene and obtained a search warrant.

Defendant was moved from the bedroom to the living room with the three other individuals. Although when he was ultimately booked, defendant said he was unemployed, officers, when they searched defendant, found on his person 18 $100 and 31 $20 bills, totaling $2,420 in cash. When they searched the other three individuals, they found no residue, contraband, money, or drug paraphernalia.

During the search pursuant to the search warrant, the deputies found a loaded .45 caliber handgun under the mattress in the bedroom where defendant was found. Sneakers belonging to defendant were next to the bed. A bullet proof vest was found in the living room. The kitchen was only eight feet from the master bedroom, and defendant would have run through the kitchen to get to the bedroom. In the kitchen, officers found bullets matching the gun. Also in the kitchen, deputies found several items associated with "cooking" cocaine, including baking soda, a microwave oven, a Pyrex measuring cup, a tablespoon, a razorblade, and a digital scale, all with cocaine residue on them. Four pre-packaged bags of crack cocaine were found in a kitchen drawer. The SBI ultimately weighed two of the bags and determined that one weighed 25.0 grams and the other weighed 25.8 grams. The crack cocaine appeared to have been cooked within a couple of hours of being seized as it was still damp.

During the search of the mobile home, officers found a gym membership contract and a receipt belonging to defendant, although neither identified the Briar Creek Park Lane mobile home as defendant's residence. At trial, Jasmine Chance testified that she began leasing the trailer located at 212 Briar Creek Park Lane in February 2006 and that she lived there alone with her son. Defendant would come to the trailer to visit Chance at least once a week. At some point, Chance and defendant talked about him taking over her rent because she could not afford the trailer, but they never came to an agreement.

Towards the end of March or early April 2006, Chance's landlord, Leamon Parker, began seeing a black Charger at the 212 Briar Creek Park Lane residence "pretty much on a daily basis." Chance moved out of the mobile home in late April or early May 2006, without notifying her landlord or turning off the utilities. She took her clothes, but left most of the furniture. Chance did not give anyone, including defendant, permission to stay in the trailer after she moved out. Parker, however, testified that someone, who was not identified, had paid the rent on the trailer through July 2006. Parker entered the trailer in mid-July 2006 and found it "vacated" and the utilities turned off.

On 10 April 2007, defendant was indicted for (1) trafficking in cocaine by possession, (2) trafficking in cocaine by manufacturing, (3) possession of drug paraphernalia, (4) possession with intent to manufacture, sell, or deliver cocaine, (5) manufacturing cocaine, (6) maintaining a dwelling for keeping or selling a controlled substance, and (7) possession of a firearm by a felon. Defendant moved to suppress all evidence seized on 12 July 2006, arguing that it was seized in violation of his Fourth Amendment rights because of the lack of a search warrant or, if seized after the warrant was obtained, constituted fruit of the poisonous tree.

The trial court conducted a suppression hearing prior to trial, during which the State presented the testimony of Ides and Springs. Defendant presented no evidence. The trial court orally denied the motion and subsequently entered a written order on 26 February 2008. In that order, the trial court found that the deputies had probable cause to believe defendant was in the mobile home after seeing him run to the rear of the trailer and concluded that exigent circumstances justified the warrantless entry as "[t]he officers reasonably believed that a dangerous situation existed for them and the remaining occupants of the mobile home from the totality of the circumstances aware to them."

After denying defendant's motion to suppress, the trial court took a lunch recess prior to beginning the trial. Defendant did not return to court after the recess. The trial court denied defendant's motions to dismiss at the close of the State's evidence and the close of all the evidence. The trial court submitted to the jury the charges of trafficking in cocaine by possession, trafficking in cocaine by manufacture (with a possible verdict of manufacture of cocaine listed as a lesser included offense), possession of drug paraphernalia, PWISD, and intentionally maintaining a dwelling house for the purpose of keeping and selling cocaine (with a possible verdict of knowingly maintaining a dwelling house as a lesser included offense).

The jury convicted defendant of all the charges, including the greater offenses of trafficking in cocaine by manufacture and intentionally maintaining a dwelling house. The trial court sentenced defendant to 35 to 42 months imprisonment on the trafficking by possession, trafficking by manufacture, and possession of drug paraphernalia convictions. Defendant was sentenced to a consecutive term of 20 to 24 months imprisonment for the possession of a firearm by a felon conviction. Finally, defendant was sentenced to a consecutive term of 11 to 14 months for the PWISD and maintaining a dwelling convictions. Defendant timely appealed to this Court.

## Motion to Suppress

In reviewing the denial of a motion to suppress, the appellate court determines whether the trial court's findings of fact are supported by competent evidence and whether those findings, in turn, support the court's conclusions of law. *State v. Cooke,* 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Where, as here, the defendant does not challenge the findings of fact on appeal, they are binding, and the only question before this Court is whether those findings support the trial court's conclusions. *State v. Cooper,* 186 N.C. App. 100, 103, 649 S.E.2d 664, 666 (2007), *disc. review denied,* 362 N.C. 476, 666 S.E.2d 761 (2008).

[1] As an initial matter, we note that the State argues in its brief that defendant lacks standing under the Fourth Amendment to challenge the seizure of the evidence. The trial court did not, however, deny defendant's motion on this ground, and the State did not cross-assign error to the court's failure to do so under Rule 10(d) of the Rules of Appellate Procedure. The State thus failed to properly preserve for appellate review this alternative basis for upholding the trial court's order. *See Harllee v. Harllee,* 151 N.C. App. 40, 51, 565 S.E.2d 678, 685

(2002) ("[P]laintiff failed to cross-assign error pursuant to Rule 10(d) to the trial court's failure to render judgment on these alternative grounds. Therefore, plaintiff has not properly preserved for appellate review these alternative grounds.").

[2] Turning to the actual bases for the trial court's order, " '[i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.' " *State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997) (quoting *Payton v. New York*, 445 U.S. 573, 586, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380 (1980)). Our Supreme Court has explained, however, that "in the presence of an emergency or dangerous situation described as an 'exigent circumstance,' officials may lawfully make a warrantless entry into a home to effect an arrest." *State v. Guevara*, 349 N.C. 243, 250, 506 S.E.2d 711, 716 (1998) (quoting *Payton*, 445 U.S. at 583, 63 L. Ed. 2d at 648-49, 100 S. Ct. at 1378), *cert. denied*, 526 U.S. 1133, 143 L. Ed. 2d 1013, 119 S. Ct. 1809 (1999). In deciding whether exigent circumstances were present, "we must consider the totality of the circumstances." *Id.* Our Supreme Court pointed out that the United States Supreme Court has indicated that "a suspect's fleeing or seeking to escape could be considered an exigent circumstance," as well as " 'imminent destruction of evidence, or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling.' " *Id.* (quoting *Minnesota v. Olson*, 495 U.S. 91, 100, 109 L. Ed. 2d 85, 95, 110 S. Ct. 1684, 1690 (1990)).

In *Guevara*, the police spoke to the defendant, who was accompanied by a young child, outside a mobile home. When the officer stated that he was going to arrest the defendant on an outstanding arrest warrant, the defendant entered the trailer and slammed the door. *Id.* at 248-49, 506 S.E.2d at 715. An officer immediately entered the trailer behind the defendant. The Supreme Court held that "the defendant's actions, in suddenly withdrawing into his home and slamming the door, created the appearance that he was fleeing or trying to escape, and this coupled with the presence of a young child suddenly caught in such circumstances created an exigent circumstance justifying [the officer's] entry without a warrant." *Id.* at 250-51, 506 S.E.2d at 717. The Court concluded that the trial court, therefore, properly denied the motion to suppress evidence obtained as a result of the entry. *Id.* at 251, 506 S.E.2d at 717.

This case presents similar circumstances. Defendant does not dispute that the officers had probable cause to arrest defendant based on the outstanding warrant. The trial court's unchallenged find-

ings further establish that Detectives Ides and Springs were aware that defendant had absconded from his probation violation hearing a month earlier and thus was a flight risk. The detectives also knew of "defendant's previous conviction for armed robbery as well as his other narcotics convictions and assaultive behavior" and that defendant was normally armed. The trial court found that, based on this knowledge, when the officers saw defendant run out of view when the deputies announced their presence, "Ides and the other law enforcement officers became seriously alarmed about where [defendant] had run to in the mobile home and what he was doing. These actions raised concerns in Ides and the other law enforcement officers for their safety and the other occupants in the mobile home." The trial court then concluded that "[t]he officers reasonably believed that a dangerous situation existed for them and the remaining occupants of the mobile home from the totality of the circumstances aware to them."

Based on *Guevara*, these findings of fact are sufficient to support the trial court's conclusion that exigent circumstances existed justifying the warrantless entry into the mobile home in pursuit of defendant. The officers reasonably believed that defendant was attempting to escape and that there was a risk of danger to the officers (some of whom were behind the trailer), as well as the other occupants of the trailer. *See also State v. Harris*, 145 N.C. App. 570, 581, 551 S.E.2d 499, 506 (2001) (finding sufficient exigent circumstances to justify warrantless entry when detectives had reason to believe defendant was in hotel room, delay could have led to destruction of controlled substances, and there was a risk to other guests if defendant attempted to escape), *appeal dismissed and disc. review denied*, 355 N.C. 218, 560 S.E.2d 146 (2002).[1] The trial court, therefore, properly denied defendant's motion to suppress.

## Motion to Dismiss

[3] Defendant next contends that the trial court erred in denying his motion to dismiss. A defendant's motion to dismiss should be denied

1. Defendant cites *State v. Johnson*, 64 N.C. App. 256, 307 S.E.2d 188 (1983), in support of his contentions. The Supreme Court, however, on appeal based on the dissent in *Johnson*, declined to adopt this Court's reasoning, but instead determined that the trial court's findings of fact were inadequate and remanded for new voir dire proceedings, including the taking of evidence and further findings of fact and conclusions of law. *State v. Johnson*, 310 N.C. 581, 589, 313 S.E.2d 580, 584-85 (1984). Even assuming that this Court's decision in *Johnson* has precedential value in light of the Supreme Court decision, it predates *Guevara*, which is controlling with respect to the facts of this case.

if there is substantial evidence of each essential element of the offense charged and of defendant's being the perpetrator of the offense. *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Id.* at 597, 573 S.E.2d at 869. On review of a denial of a motion to dismiss, this Court must view the evidence in the light most favorable to the State, giving it the benefit of all reasonable inferences. *Id.* at 596, 573 S.E.2d at 869. Contradictions and discrepancies in the evidence do not warrant dismissal, but rather are for the jury to resolve. *Id.*

With respect to the offenses of trafficking in cocaine by possession, possession with intent to sell or deliver cocaine, and possession of drug paraphernalia, defendant contends that the State presented insufficient evidence that defendant possessed the cocaine or the drug paraphernalia. Possession of a controlled substance may be actual or constructive. *State v. McLaurin*, 320 N.C. 143, 146, 357 S.E.2d 636, 638 (1987). "A person has actual possession of a substance if it is on his person, he is aware of its presence, and either by himself or together with others he has the power and intent to control its disposition or use." *State v. Reid*, 151 N.C. App. 420, 428-29, 566 S.E.2d 186, 192 (2002). In contrast, constructive possession exists when the defendant, " 'while not having actual possession, . . . has the intent and capability to maintain control and dominion over' the narcotics." *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (quoting *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986)).

When a defendant does not have exclusive possession of the location where the drugs are found, the State is required to show " 'other incriminating circumstances' " in order to establish constructive possession. *Id.*, 556 S.E.2d at 271 (quoting *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989)). "[C]onstructive possession depends on the totality of circumstances in each case." *State v. James*, 81 N.C. App. 91, 93, 344 S.E.2d 77, 79 (1986).

In this case, the State presented evidence that would permit the jury to find that defendant was occupying the mobile home (although without permission), including evidence of his interactions with Chance, the regular parking of his car at the mobile home, and the presence of personal papers and his shoes in the home. When the officers announced their presence, defendant fled to the back bedroom of the mobile home, where he was found with white powder on his forearms and wrists. When asked about the white powder that was

found in the adjoining bathroom—in the sink, on the counter, in a trail along the floor, on the toilet, and in the toilet—defendant made statements that suggested he had just disposed of the cocaine. One officer testified without objection, based on his training and experience, that he believed that defendant had been trying to flush the cocaine down the toilet.

In the kitchen, which was eight feet from the bedroom where defendant was found and through which defendant would have run to reach the bedroom, the officers found a measuring cup, digital scale, razorblade, and microwave oven, all of which were covered in cocaine residue. The officers found more than 50.8 grams of recently "cooked" crack cocaine in a kitchen drawer and $2,420 in $100 and $20 bills on defendant's person. None of the three other people occupying the trailer when the officers arrived had any residue, money, contraband, or paraphernalia on them, and none of them had left the living room.

This evidence constituted sufficient evidence of other incriminating circumstances to warrant denial of defendant's motion to dismiss the charges of trafficking in cocaine by possession, possession with intent to sell or deliver cocaine, and possession of drug paraphernalia. *See State v. Battle*, 167 N.C. App. 730, 733, 606 S.E.2d 418, 420 (2005) (holding that State presented sufficient evidence of constructive possession of cocaine found in motel room when, even though room was rented to someone else, defendant was seen in room, room contained some of defendant's clothing and personal papers, and defendant's car was parked in motel parking lot); *State v. Frazier*, 142 N.C. App. 361, 367, 542 S.E.2d 682, 687 (2001) ("Other incriminating evidence, connecting Defendant with the drugs, includes his 'lunge' into the bathroom and the placing of his hands into the bathroom ceiling, where the drugs were later found."); *State v. Morgan*, 111 N.C. App. 662, 665-66, 432 S.E.2d 877, 879-80 (1993) (holding State presented sufficient evidence of other incriminating circumstances when, even though defendant was not present in apartment, officers found wallet containing defendant's personal documents and $2,600 in cash in bedroom where crack cocaine was found; cash included marked bills used in controlled sale; defendant used bedroom; and defendant ran into apartment during course of controlled sale); *State v. Neal*, 109 N.C. App. 684, 688, 428 S.E.2d 287, 290 (1993) (concluding evidence of incriminating circumstances was sufficient when defendant fled bathroom where cocaine was being flushed as police entered residence); *State v. Alston*, 91 N.C. App. 707, 710-11, 373

S.E.2d 306, 309 (1988) (finding evidence of other incriminating circumstances sufficient when defendant was in close proximity to the cocaine and had large amount of cash on his person). The trial court, therefore, properly denied the motion to dismiss these charges.

[4] With respect to defendant's conviction for possession of a firearm by a felon, defendant similarly argues that the State presented insufficient evidence that he was in constructive possession of the handgun. In *State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998), this Court explained that to show possession of a firearm when more than one person may have access to it, there must be "a showing of some independent and incriminating circumstance, beyond mere association or presence, linking the person(s) to the item . . . ."

Here, while defendant was found in the same room with the gun, that was not the only circumstance. In addition to the evidence outlined above in connection with the drug-related charges, the handgun itself was not sitting out in the open where anyone could have access to it, but rather was tucked under the mattress of the bed near where a person's head would be. Defendant's shoes were found right next to that bed. While there were indications that defendant was residing in the trailer at the time of the search given the constant presence of his car and the finding of his shoes and certain personal papers, there was no indication that anyone else was residing in the trailer once the tenant left—the only other documentation found was junk mail addressed to the actual tenant. After defendant's arrest, the trailer was then vacant. We hold that this evidence is sufficient to support the possession of a firearm charge. *Compare id.*, 508 S.E.2d at 319 (finding evidence of possession insufficient when gun was lying on console of defendant's brother's car between defendant's wife, who was driving, and defendant who was in passenger seat, and gun was bought and owned by defendant's wife).

[5] Next, defendant contends that the State failed to present sufficient evidence with respect to the charge of trafficking in cocaine by manufacturing that defendant was the person manufacturing cocaine at 212 Briar Creek Park Lane. The evidence tending to prove that defendant was occupying the trailer at 212 Briar Creek Park Lane, the evidence of defendant's solo efforts to dispose of cocaine upon the arrival of the officers, the fact that defendant would have had to run through the kitchen to reach the bathroom where the cocaine was apparently flushed, and defendant's carrying on his person $2,420 in $100 and $20 bills was sufficient evidence to warrant denial of the

motion to dismiss this charge. *See State v. Brown*, 310 N.C. 563, 569-70, 313 S.E.2d 585, 589 (1984) (holding that there were circumstances other than defendant's proximity to contraband "which tend to buttress the inference that defendant was the person engaged in the manufacture of cocaine" when defendant had a key to apartment where cocaine was found, defendant had $1,700 in cash in his pockets, and defendant, while under surveillance, was always seen at apartment and not at his claimed residence).

[6] Finally, defendant challenges the sufficiency of the evidence to support the charge of maintaining a dwelling for the purpose of keeping or selling a controlled substance. To obtain a conviction for knowingly or intentionally keeping or maintaining a place for the purpose of keeping or selling controlled substances under N.C. Gen. Stat. § 90-108(a)(7) (2007), the State has the burden of proving a defendant: "(1) knowingly or intentionally kept or maintained; (2) a building or other place; (3) being used for the keeping or selling of a controlled substance." *Frazier*, 142 N.C. App. at 365, 542 S.E.2d at 686.

Defendant argues that the State failed to present evidence of the first element: that he maintained the residence within the meaning of N.C. Gen. Stat. § 90-108(a)(7). To determine whether a person keeps or maintains a place under N.C. Gen. Stat. § 90-108(a)(7), the court considers the following factors, none of which are dispositive: "ownership of the property, occupancy of the property, repairs to the property, payment of utilities, payment of repairs, and payment of rent." *State v. Baldwin*, 161 N.C. App. 382, 393, 588 S.E.2d 497, 506 (2003). The determination depends on the totality of the circumstances. *Id. See also State v. Boyd*, 177 N.C. App. 165, 174, 628 S.E.2d 796, 804 (2006) ("A pivotal factor is whether there is evidence that defendant owned, leased, maintained, or was otherwise responsible for the premises.").

Here, even viewing the evidence in the light most favorable to the State, the only evidence in the record relevant to the issue of "maintaining" is (1) that defendant discussed with Chance, the mobile home's actual tenant, taking over the rent payments for the mobile home, but never reached an agreement for defendant to do so; (2) that a black Charger, similar to defendant's, was regularly parked outside the trailer even after Chance vacated the trailer; and (3) defendant's shoes and some of his personal papers were found in the mobile home. The State presented no evidence that defendant paid the rent; the evidence indicated only that someone other than Chance paid it for June and July 2006. The State also presented no evidence that

defendant paid the utilities for the mobile home, paid for any repairs, made any repairs, or otherwise took responsibility for the mobile home. At most, therefore, the evidence suggested that defendant occupied the mobile home trailer for approximately two months.

Under the controlling precedent, this evidence is not sufficient to support defendant's conviction for maintaining a dwelling for the purpose of keeping or selling a controlled substance. In *State v. Harris*, 157 N.C. App. 647, 652, 580 S.E.2d 63, 66-67 (2003), this Court held that the State's evidence was insufficient to support a conviction under N.C. Gen. Stat. § 90-108(a)(7) when the State only presented evidence that the defendant was seen at the residence several times over a two-month period, an officer spoke with the defendant there twice during that time, and the defendant's personal property was found in a bedroom. The record contained "no evidence that defendant owned the property, bore any expense of renting or maintaining the property, or took any other responsibility for the property." *Id.*

Similarly, in *State v. Bowens*, 140 N.C. App. 217, 221-22, 535 S.E.2d 870, 873 (2000), *disc. review denied*, 353 N.C. 383, 547 S.E.2d 417 (2001), this Court concluded the evidence was inadequate when it showed only that the defendant was observed frequenting a residence and male clothes were found in a closet there, but there was no evidence that defendant's name was on a lease or utility bills or that he was in any way responsible for the dwelling's upkeep. We find *Harris* and *Bowens* materially indistinguishable from the evidence in this case. *See also State v. Carter*, 184 N.C. App. 706, 709-10, 646 S.E.2d 846, 849 (2007) (finding evidence insufficient when State showed only that defendant was sole occupant of residence at time of search warrant's execution, and officers had found three photographs of defendant in house and various significant personal papers belonging to defendant, but State "presented no evidence indicating that defendant owned the property, bore any expense for renting or maintaining the property, or took any other responsibility for the residence").

The State argues, however, that it presented evidence establishing several of the factors articulated in *Frazier*: finding in the trailer large amounts of cash, drugs, and drug paraphernalia. The State misreads *Frazier*. That evidence was relevant to the question "whether a particular place is used to keep or sell controlled substances," 142 N.C. App. at 366, 542 S.E.2d at 686 (internal quotation marks omitted), and not to "[w]hether a person 'keep[s] or maintain[s]' a place," *id.* at 365, 542 S.E.2d at 686 (first alteration added) (quoting N.C. Gen.

Stat. § 90-108(a)(7)). On the issue before this Court, the State, in *Frazier*, had not only presented evidence that the defendant lived in the hotel room where the drugs were found for six or seven weeks, but also that he had, at times, paid the rent for the room. *Id.* at 366, 542 S.E.2d at 686. Since the State presented no evidence in this case that defendant paid any amount towards the cost of the mobile home, *Frazier* does not control, and we must hold that the trial court erred in failing to grant the motion to dismiss the charge of maintaining a dwelling for the purpose of keeping or selling a controlled substance.

We, therefore, reverse defendant's conviction on the charge of maintaining a dwelling for the purpose of keeping or selling a controlled substance. Because the trial court consolidated that conviction with defendant's PWISD conviction into a single judgment for sentencing purposes, we must remand for resentencing as to the PWISD conviction. *See State v. Brown*, 350 N.C. 193, 213, 513 S.E.2d 57, 70 (1999) (remanding, after vacating one of defendant's convictions, for resentencing on remaining conviction as Court could not "assume that the trial court's consideration of two offenses, as opposed to one, had no affect [sic] on the sentence imposed").

No error in part; reversed and remanded for resentencing in part.

Judges McGEE and BRYANT concur.