JAMES W. POWELL, JR., PLAINTIFF v. CITY OF NEWTON, A MUNICIPAL CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF v. SHAVER WOOD PRODUCTS, INC., A NORTH CAROLINA CORPORATION, AND W.K. DICKSON ENGINEERING, INC., A NORTH CAROLINA CORPORATION, THIRD-PARTY DEFENDANTS

No. 482A09

(Filed 20 December 2010)

**Statute of Frauds— settlement agreement in open court— judicial estoppel**

The Court of Appeals did not err by concluding that a settlement agreement reached between the parties in open court and orally ratified by those parties before the judge, but never memorialized by a signed writing, was enforceable even though the statute of frauds under N.C.G.S. § 22-2 would otherwise require a signed writing. The doctrine of judicial estoppel prevented plaintiff from reneging on his agreement. Otherwise, plaintiff would be allowed to evade a contractual obligation freely entered in open court.

Justice MARTIN concurring in separate opinion.

Justice BRADY joining in concurring opinion.

Justice HUDSON dissenting.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. ——, 684 S.E.2d 55 (2009), affirming orders entered on 27 May 2008 by Judge Yvonne Mims Evans and on 19 August 2008 by Judge W. Robert Bell, both in Superior Court, Catawba County. Heard in the Supreme Court 23 March 2010.

*Crowe & Davis, P.A., by H. Kent Crowe; and Sigmon, Isenhower, and Barkley, by W. Gene Sigmon, for plaintiff-appellant.*

*Baucom Claytor Benton Morgan & Wood, PA, by M. Heath Gilbert, Jr. and James F. Wood, III, for defendant-appellee City of Newton; and Pope, McMillan, Kutteh, Privette, Edwards & Schieck, PA, by William P. Pope and Martha N. Peed, for Shaver Wood Products, Inc., and Hamilton Moon Stephens Steele & Martin, PLLC, by Rebecca K. Cheney and David B. Hamilton, for W.K. Dickson Engineering, Inc., third-party defendant-appellees.*

## POWELL v. CITY OF NEWTON

[364 N.C. 562 (2010)]

EDMUNDS, Justice.

In this case we consider whether a settlement agreement reached between the parties in open court and orally ratified by those parties before the judge, but never memorialized by a signed writing, is unenforceable as a violation of the statute of frauds. N.C.G.S. § 22-2 (2009). Because successful invocation of the statute of frauds would allow plaintiff to evade a contractual obligation that he freely entered in open court, subverting the finality of such agreements and undermining the judicial process, we conclude that even though the statute of frauds would otherwise require a signed writing, the doctrine of judicial estoppel prevents plaintiff from reneging on his agreement. Accordingly, we affirm the decision of the Court of Appeals as modified herein.

Shortly before January 2005, defendant City of Newton ("the city") began the process of constructing a park on land abutting plaintiff's property. The city hired Shaver Wood Products, Inc. ("Shaver") to clear and harvest timber on the park property and W.K. Dickson Engineering, Inc. ("Dickson") to carry out the design, development, and management of the project.

On 2 December 2005, plaintiff filed a complaint alleging, *inter alia*, that the city's agents had trespassed on his property and wrongfully cut and removed hardwood trees. The city subsequently filed a third-party complaint against Shaver and Dickson, seeking indemnification should it be held liable to plaintiff.

Trial began the week of 12 November 2007. On 14 November 2007, after the jury had begun hearing evidence, the city's attorney informed the court after a recess but before the jury returned to the courtroom that the parties had reached a settlement under which plaintiff agreed to quitclaim his interest in the disputed land in exchange for $30,000 from the city and $5,000 each from Shaver and Dickson. As the attorneys for all the parties discussed with the court how promptly the agreement could be implemented, the city's attorney added, "[I]t's just a technicality, but city council has to bless this."

The court directly addressed the participants. Attorneys for corporate parties Shaver and Dickson indicated their clients' assent. After plaintiff's counsel also confirmed the agreement, the court asked plaintiff directly: "That's your agreement, Mr. Powell? . . . Is that your agreement, sir?" Plaintiff[1] responded, "I don't have any

---

1. The trial transcript incorrectly identifies the speaker as "the defendant."

choice," but his counsel explained to plaintiff, "You do have a choice." The trial judge said, "I understand your sentiment, sir," then again asked plaintiff directly: "But is that your agreement?" Plaintiff responded to the judge: "Yes, that's my agreement." With all the parties having consented to the agreement, the court terminated the trial.

On 21 November 2007, the attorneys used electronic means (specifically, e-mail) to exchange a draft written document memorializing their 14 November 2007 agreement. The attorneys modified the document and forwarded it by e-mail to the parties on 27 November. Further e-mail correspondence was exchanged on 12 December, along with the final agreement. At the same time, the city delivered $40,000 to plaintiff's attorney, who deposited the funds into his firm's trust account. The exchanged document, titled "Settlement Agreement and Release," stipulated that it constituted the entire agreement between the parties. Plaintiff subsequently refused to execute the agreement and to consummate the settlement.

In a motion filed on 30 January 2008, the city moved for a court order to require plaintiff to meet his obligations under the 14 November 2007 settlement agreement. On 20 February, plaintiff, now represented by new counsel, filed a reply, asserting that he was not bound, both because the agreement was conditional upon the city council's approval and because his in-court statement agreeing to the settlement "was not knowingly, freely, and voluntarily made, and was coerced." Plaintiff subsequently amended his reply to add the affirmative defense that the settlement agreement, as a contract for the sale of land, was void under the statute of frauds, N.C.G.S. § 22-2, because it "was not in writing, and was not signed by the party to be charged, or any other person authorized by . . . [p]laintiff to sign on his behalf."

The trial court heard the matter during the 4 May 2008 civil term of Superior Court, Catawba County. The court found as fact that "[t]he terms and conditions of the settlement were recited into the record, and the presiding [j]udge . . . confirmed with [p]laintiff . . . that [plaintiff] knowingly and voluntarily entered into the settlement of all issues, and further, the Court confirmed the terms and conditions of the settlement with [p]laintiff." The hearing court further found as fact that the terms and conditions of the settlement were subsequently "confirmed in writing by electronic communication between counsel" for the parties and that the sum of $40,000 was delivered to counsel for plaintiff. Based upon these findings of

fact, the court concluded as a matter of law that "[p]laintiff entered into a valid and binding settlement of all issues" and defendant was entitled to specific performance. Accordingly, the trial court ordered plaintiff to execute the written Settlement Agreement and Release, along with a quitclaim deed, and to deliver those documents to counsel for the city.

Plaintiff appealed. A divided panel of the Court of Appeals affirmed the decision of the trial court, holding that the settlement agreement was not void under the statute of frauds. *Powell v. City of Newton*, —— N.C. App. ——, ——, 684 S.E.2d 55, 57 (2009). The majority held that because the parties had agreed in open court that defendants would pay plaintiff in exchange for plaintiff's execution of the settlement agreement and quitclaim deed, because the in-court terms of the agreement were transcribed, and because the parties exchanged e-mails to which the Settlement Agreement and Release was attached, "[t]here can be no doubt that the essential terms of the contract were reduced to writing." *Id.* at ——, 684 S.E.2d at 58. The majority stated that the statute of frauds " 'was not meant to be used by [a party] to evade an obligation based on a contract fairly and admittedly made.' " *Id.* at ——, 684 S.E.2d at 58 (quoting *House v. Stokes*, 66 N.C. App. 636, 641, 311 S.E.2d 671, 675, *cert. denied*, 311 N.C. 755, 321 S.E.2d 133 (1984)).

In addressing plaintiff's refusal to sign the documents memorializing the agreement, the Court of Appeals majority invoked judicial estoppel and concluded that the doctrine trumped the statute of frauds because the oral agreement was manifested in open court before the judge. *Id.* at ——, 684 S.E.2d at 58-59. The majority concluded that plaintiff's refusal to execute the agreement and quitclaim deed was "clearly . . . inconsistent" with his earlier acknowledgment that he accepted the terms of the agreement, adding that, "[i]f not estopped, plaintiff would impose an unfair detriment to defendants." *Id.* at ——, 684 S.E.2d at 59.

The majority went on to hold that, in any event, the agreement was signed electronically because the e-mail exchange between the attorneys that followed the in-court agreement satisfied the requirements of the Uniform Electronic Transactions Act, N.C.G.S. §§ 66-311 to -330 (2009). *Id.* at ——, 684 S.E.2d at 60. Considering together the hearing transcript, the draft agreement, the draft quitclaim deed, and the e-mails, the Court of Appeals majority concluded that the settlement agreement was "in total compliance with the statute of frauds." *Id.* at ——, 684 S.E.2d at 60.

POWELL v. CITY OF NEWTON

[364 N.C. 562 (2010)]

The dissenting judge disagreed, arguing that the agreement did not satisfy the North Carolina statute of frauds. In addition, the dissent noted that our statute contains no exception for "judicial admissions" and that most states that recognize such an exception require the admission be made under oath. *Id.* at ——, 684 S.E.2d at 62 (Wynn, J., dissenting). The dissent also argued that the exchange of e-mails did not constitute an electronic signature by plaintiff because no e-mail originating from plaintiff or his counsel indicated an intent to sign the agreement. *Id.* at ——, 684 S.E.2d at 63. Finally, the dissent contended that the purported agreement discussed in open court was conditional and therefore not binding because "where an agreement is made subject to the approval of another promisor, there can be no implied promise, and thus there is no mutuality of obligation to support the agreement." *Id.* at ——, 684 S.E.2d at 63. Plaintiff appeals on the basis of the dissenting opinion.

I.

We begin by considering plaintiff's argument that there was no agreement because the settlement was contingent upon the city council's approval. A settlement agreement such as the one here is a contract subject to the ordinary rules governing such instruments. *Bolton Corp. v. T.A. Loving Co.*, 317 N.C. 623, 628, 347 S.E.2d 369, 372 (1986). Where parties enter a contract containing a condition precedent, they are bound when the condition is satisfied. *See, e.g., Chavis v. S. Life Ins. Co.*, 318 N.C. 259, 264, 347 S.E.2d 425, 428-29 (1986) (describing a lapsed insurance policy as reinstated in law once specified conditions precedent were met); *Harris & Harris Constr. Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 117, 123 S.E.2d 590, 595 (1962) (observing that parties may impose any condition precedent when negotiating a contract and performance of the condition is essential before the parties become bound by the contract). "A condition precedent is an event which must occur before a contractual right arises, such as the right to immediate performance." *Foreclosure of Goforth Props., Inc. v. Birdsall*, 334 N.C. 369, 375, 432 S.E.2d 855, 859 (1993) (citation omitted). "The event may be largely within the control of the obligor or the obligee." *Id.*

Here, the parties announced in open court their intent to be bound. Even assuming that the comment by the city's attorney that the "city council has to bless this" constituted a condition precedent, that condition was satisfied when, before plaintiff refused to comply with the agreement, defendants' funds in the amount specified by the

agreement were transferred into plaintiff's attorney's trust account, concretely indicating that the city council had approved the agreement. Moreover, at the hearing to enforce the settlement agreement, when plaintiff's counsel suggested that the agreement would not be enforceable if the city council had not approved, the trial court responded: "But they did. I mean, that's really not the issue." Plaintiff therefore may not shield himself behind the purportedly conditional nature of the agreement.

## II.

Plaintiff argues that the agreement is invalid because it violates the statute of frauds. Specifically, plaintiff contends that the Settlement Agreement and Release lacks the signature required by that statute. N.C.G.S. § 22-2. The city responds that plaintiff's in-court statements and the e-mail correspondence between counsel for the parties constitute an electronic signature as defined by the Uniform Electronic Transactions Act.

The statute of frauds provides:

> All contracts to sell or convey any lands . . . or any interest in or concerning them . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized.

*Id.* The settlement agreement constituted a contract for the sale of real property, and the existence of a memorandum is not in dispute, so we consider whether plaintiff's statements in open court and the subsequent e-mail correspondence between attorneys constitute the "signature" required by the statute of frauds.

An " '[e]lectronic signature' means an electronic sound, symbol, or process attached to, or logically associated with, a record and executed or adopted by a person with the intent to sign the record." *Id.* § 66-312(9). Electronic signatures are given the same legal recognition as traditional signatures and may satisfy the statute of frauds. *Id.* § 66-317(a), (d). However, the provisions of the Electronic Transactions Act apply only to "transactions between parties each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." *Id.* § 66-315(b).

POWELL v. CITY OF NEWTON

[364 N.C. 562 (2010)]

While the attorneys for the parties used e-mail and other electronic means to exchange documents and resolve details of the settlement agreement, their conduct indicated an understanding that the signature required by the statute of frauds for this conveyance of land would be plaintiff's physical signature. This understanding is reflected in an e-mail exchange of 12 December 2007. In response to a previous e-mail, plaintiff's counsel sent an e-mail to the city's attorney that opens: "[W]e had no deal with respect to" and lists several small but unresolved matters. The city's attorney answered by e-mail the same day that: "Ok. Got the changes. I am sending you the checks, the settlement agreement and a voluntary dismissal. Have [plaintiff] sign the agreement and send me back an executed copy. Also, you can send the quitclaim directly to Larry Pitts and he will file it. I am getting everything out to you today." In light of the express indication by the city's attorney that plaintiff should sign and forward the settlement documents, we conclude that the parties did not agree to the use of electronic signatures in lieu of physical signatures in this transaction.

Because the parties intended for plaintiff's physical signature to appear on the Settlement Agreement and Release, and because no signature is affixed, the writing is not signed. Accordingly, that document does not satisfy the signature requirement of the statute of frauds, and the Court of Appeals majority erred in finding the agreement to be "in total compliance with" that statute.

III.

The city argues that even if the statute of frauds is applicable, the agreement nevertheless is enforceable under the doctrine of judicial estoppel. We have observed that "in proper cases an estoppel predicated upon grounds of silence or fraud may override the statute of frauds." *Callaham v. Arenson*, 239 N.C. 619, 626, 80 S.E.2d 619, 625 (1954) (citations omitted). While there is no suggestion of fraud in this case, if silence may be grounds for an estoppel, plaintiff's positive statement that he accepted the agreement may also present a compelling basis for invoking the doctrine. Accordingly, we consider the applicability of judicial estoppel to the facts of this case.

Judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 149 L. Ed. 2d 968, 977 (2001) (citations and internal quotation marks omitted). As the dissenting judge below accurately

pointed out, the North Carolina statute of frauds does not contain an exception to the signature requirement for agreements reached in court. However, equitable doctrines such as estoppel "serve[] to moderate the unjust results that would follow from the unbending application of common law rules and statutes." *Brooks v. Hackney*, 329 N.C. 166, 173, 404 S.E.2d 854, 859 (1991).

Broadly speaking, judicial estoppel prevents a party from acting in a way that is inconsistent with its earlier position before the court. *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 28-29, 591 S.E.2d 870, 888-89 (2004). This equitable doctrine, which may be invoked in a court's discretion, *id.*, is "inherently flexible" and requires weighing of relevant factors, 358 N.C. at 28, 591 S.E.2d at 888. It is limited to assertions of fact in civil proceedings and does not require an intent to deceive the court, though such intent may nevertheless be a consideration supporting invocation of the doctrine. *Id.* at 30-34 591 S.E.2d at 889-92. While many factors can affect a court's decision whether to invoke the doctrine, three frequently considered aspects of a case are whether: (1) the party's subsequent position is "clearly inconsistent with its earlier position," *id.* at 29, 591 S.E.2d at 888 (citations and internal quotation marks omitted); (2) judicial acceptance of a party's position might threaten judicial integrity because a court has previously accepted that party's earlier inconsistent position, *id.* at 29, 591 S.E.2d at 889 (citations omitted); and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party" as a result, *id.* (citation and quotation marks omitted).

Turning to the first inquiry, we consider whether plaintiff's later position "is clearly inconsistent with" an earlier position expressed in court. 358 N.C. at 29, 591 S.E.2d at 888. The record shows that plaintiff made a statement directly to the trial judge affirming that the arrangement described by counsel was his agreement. Plaintiff's later refusal to execute the written agreement or be bound by it is plainly inconsistent with his statement to the court.

The second factor is whether acceptance of the party's later inconsistent position would threaten judicial integrity because a court has already accepted the previous position. *Id.* at 29, 591 S.E.2d at 889. In evaluating this factor, we are mindful of such considerations as whether acceptance of the latter position would result in "inconsistent court determinations" or create "the perception that either the first or the second court was misled." *New Hampshire v. Maine*, 532 U.S. at 750-51, 149 L. Ed. 2d at 978 (citations and quota-

tion marks omitted), *quoted in Whitacre,* 358 N.C. at 29, 591 S.E.2d at 889. The settlement agreement reached in open court with plaintiff's consent purported to end the controversy between the parties. After all parties expressed their approval, the judge called off the trial and sent the jurors home. Any conclusion that plaintiff had not reached an agreement or that the matter had not been resolved would be inconsistent both with plaintiff's own words and with the actions of the trial court. Moreover, failure to estop plaintiff from asserting a contradictory position would indicate either that he misled the first court into believing he had agreed to the settlement or that he misled the second court into believing he had not agreed to the settlement.

Third, plaintiff sought to undo his assent to the agreement after a final version of the agreement was drafted and after defendants had transferred the designated payment(s) to plaintiff's attorney. Under such circumstances, failure to estop plaintiff from reversing his position after he agreed to the settlement in court would give plaintiff unfair power to extract additional concessions from the city and other defendants in any further settlement negotiations. Accordingly, while the resolution of these three factors is not necessarily conclusive in determining whether to apply judicial estoppel, our analysis of each consideration indicates that invocation of the doctrine is appropriate.

Plaintiff contends that because he did not give his assent to the settlement agreement while under oath, he cannot be bound by it. Plaintiff provides no North Carolina authority for his assertion, and we have observed that "most modern authorities agree that the purpose of judicial estoppel is to protect the integrity of the judicial process, not just the sanctity of the oath." *Whitacre,* 358 N.C. at 13-14, 591 S.E.2d at 879 (internal citations and quotation marks omitted). Thus, even unsworn statements made on the record may provide a sufficient level of formality to bind a party. Holding parties to their in-court statements made on the record reinforces the solemnity of the courtroom and the reliability of the proceedings therein.

· We are mindful of the special nature of real property and that the laws of this State treat land differently from other types of property. The statute of frauds imposes heightened safeguards to protect contracts involving conveyances of land. However, the integrity of the judicial process must be similarly protected by the discriminating application of estoppel doctrines. Because the parties agreed to this settlement on the record in a court of law, specifically advising the judge that they concurred therein, we conclude that policies embod-

**POWELL v. CITY OF NEWTON**

[364 N.C. 562 (2010)]

ied in the statute of frauds have been recognized and preserved. Plaintiff is judicially estopped to deny his in-court assent to the settlement agreement. Accordingly, we affirm as modified herein the decision of the Court of Appeals upholding the trial court's order enforcing the settlement agreement.

MODIFIED AND AFFIRMED.

Justice MARTIN concurring.

I concur in the majority opinion, but write separately to express my concerns regarding the manner in which plaintiff's real property interest was alienated in the instant case.

To illuminate my concerns, it is necessary to consider a slightly longer excerpt from the colloquy between the trial court and plaintiff, a seventy-three-year-old man who was hard of hearing and did not use a hearing aid during this exchange. At this point in the underlying trial, the jury had been excused from the courtroom. After a short recess, the parties reconvened at 11:35 a.m. outside the presence of the jury. Next, counsel for the municipal defendant announced the proposed settlement to the trial court. A brief discussion ensued, mainly regarding the scheduling of closing for the land transfer. Then the following exchange occurred:

[PLAINTIFF'S ATTORNEY]: We'll do it by the 12th or on the 12th.

THE COURT: That's your agreement, Mr. Powell?

[PLAINTIFF'S ATTORNEY]: Stand up, James.

THE COURT: Is that your agreement, sir?

[PLAINTIFF]: I don't have any choice.

THE COURT: Well—.

[PLAINTIFF'S ATTORNEY]: You do have a choice.

THE COURT: I understand your sentiment, sir. But is that your agreement?

[PLAINTIFF]: Yes, that's my agreement.

[CITY'S ATTORNEY]: Thank you, Your Honor.

(These proceedings were concluded at 11:40 a.m.)

Collectively, the announcement of the proposed settlement, a brief discussion of its terms, negotiations about scheduling the closing date, and confirmation of plaintiff's assent took five minutes. At the end of this brief exchange, the trial court and all the participating attorneys had confirmed plaintiff's reluctant transfer of land.

Even if, speaking hypothetically, plaintiff later signed a deed transferring the land, this exchange would indeed remain troubling. While trial courts undoubtedly face large caseloads, the importance and sanctity of land ownership should always be respected. Trial courts faced with such a situation should exercise patience and deliberation. When a party who is presumably assenting to a settlement agreement involving the transfer of his real property states before the court, "I don't have any choice" or an equivalent phrase, the trial court should order a recess *ex mero motu* and request counsel to fully discuss the matter with the client. Even though the application of judicial estoppel is appropriate in the present case, in general, land should not be alienated in this manner.

Land is an extremely important and long-valued asset in this state and throughout this country. The singular nature of land's immense value was perhaps best expressed by the Supreme Court of Pennsylvania in 1852:

> Land is the most important and valuable kind of property. Or if it be not, there is no other stake for which men will play so desperately. In men and nations there is an insatiable appetite for lands, for the defence or acquisition of which money and even blood sometimes are poured out like water. The evidence of land-title ought to be as sure as human ingenuity can make it. But if left in parol, nothing is more uncertain, whilst the temptations to perjury are proportioned to the magnitude of the interest.

> The infirmities of memory, the death of witnesses, the corruptibility of witnesses, the honest mistakes of witnesses, and the misunderstandings of parties, these are all elements of confusion and discord which ought to be excluded from titles to the most coveted, if not most valuable of terrestrial objects. And it is the purpose of the statute of frauds and perjuries to exclude these elements, and to compel men to create testimonials of their intentions which are certain and enduring.

*Moore v. Small*, 19 Pa. 461, 465 (1852), *quoted in part in* 1 James A. Webster, Jr., Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's*

*Real Estate Law in North Carolina* § 9-6, at 284 (5th ed. 1999) [hereinafter *Webster's*]. As the Pennsylvania court summarized, the unparalleled value of land provides the basis and the inspiration for the writing requirement embodied in the statute of frauds.

The statute of frauds in North Carolina is a statutory enactment from 1819; it is not directly a part of the common or statutory law imported from England. *See Herring v. Volume Merch., Inc.*, 249 N.C. 221, 224, 106 S.E.2d 197, 200 (1958) (citing *Foy v. Foy*, 3 N.C. (2 Hayw.) 131, 132 (1801)). Nonetheless, the statute is derived from the original English statute of 1677 and, like the original, was enacted to prevent fraud and perjury in conveyances of land. *Webster's* § 9-6, at 284. A signed writing provides needed formality and solemnity to the divestment of a fee simple interest and signifies to even the most unaware layperson that a transaction of legal importance is occurring.

In the present case the lack of a signed writing results from plaintiff's desire to challenge the settlement agreement that he assented to, however reluctantly, before the trial court. The doctrine of judicial estoppel operates to prevent plaintiff's failure to sign from defeating the conveyance. Nevertheless, the facts of this case provide a cautionary tale for judges to consider as they work through their crowded dockets.

Ultimately, the trial court is in the best institutional position to slow court proceedings and protect the interests of a party reluctant to transfer his real property. Accordingly, to the extent that a party exhibits such reluctance, a trial judge should be prepared to order a recess *ex mero motu* to ensure that alienation of the fee occurs with the deliberation appropriate to the seriousness and significance of a real property transfer.

Justice BRADY joins in this concurring opinion.

Justice HUDSON dissenting.

I agree with the majority's conclusion that plaintiff did not sign the purported settlement agreement in accordance with the statute of frauds and that the Court of Appeals majority erred in determining that the agreement was "in total compliance with the statute of frauds." *Powell v. City of Newton*, —— N.C. App. ——, ——, 684 S.E.2d 55, 60 (2009) (majority). I also agree with the concurring opinion that it has long been established, both in this state and throughout this

country, that land is a special and unique asset, that land's importance and unparalleled value is a critical factor underlying the writing requirement contained in the statute of frauds, and that because of this, land should not ordinarily be alienated in the summary manner that occurred here. However, I am troubled by the Court of Appeals majority's creation, for the first time in our jurisprudence, of a judi-cial estoppel exception to the statute of frauds when neither defend-ant City of Newton ("the city") nor third-party defendants raised the issue in the trial court or argued it in the Court of Appeals. Even if we are to announce such an exception, I conclude that the trial court should have the opportunity to apply it, consistent with this Court's remand to consider the judicial estoppel issue in *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 37-39, 591 S.E.2d 870, 894-95 (2004). Moreover, even though plaintiff and his trial attorney testified under oath at the hearing on the "Motion to Enforce Settlement," the trial judge ruled and left the courtroom before this testimony was pre-sented. As the facts showing the existence, or not, of the settlement remain disputed, I would remand this case to the trial court to con-duct a new hearing on the Motion to Enforce Settlement. Therefore, I respectfully dissent.

As noted above, neither the city nor third-party defendants argued judicial estoppel in the trial court. It is well established that a party cannot raise an issue for the first time on appeal. *E.g., Higgins v. Simmons*, 324 N.C. 100, 103, 376 S.E.2d 449, 452 (1989) ("Because a contention not made in the court below may not be raised for the first time on appeal, the . . . contention [by the party seeking to raise that issue on appeal] was not *properly* presented to the Court of Appeals for review and is therefore not properly before this Court." (internal citation omitted)); *see also* N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have pre-sented to the trial court a timely request, objection, or motion, stat-ing the specific grounds for the ruling the party desired the court to make . . . . It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion."). Further, even if the city and third-party defendants had raised the issue in the trial court, the trial court's 27 May 2008 order is not based on judicial estoppel, and the city and third-party defendants failed to cross-assign that issue as error per then-applicable North Carolina Rule of Appellate Procedure 10(d), thus abandoning the issue. *See* N.C. R. App. P. 10(d) (2009) ("Without taking an appeal an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the

appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken."); *State v. Fuller*, 196 N.C. App. 412, 418, 674 S.E.2d 824, 829 (2009) (concluding that because the trial court had not denied the defendant's motion to suppress based on lack of standing and the State had not cross-assigned standing as an "alternative basis for upholding the trial court's order" under Appellate Rule 10(d), the State failed to preserve its argument for appellate review (citation omitted)). Here not only did the city and third-party defendants fail to raise this issue in the trial court or in a cross-assignment of error, they did not mention judicial estoppel in their arguments to the Court of Appeals. *See* N.C. R. App. P. 28(a) ("The function of all briefs . . . is to define clearly the issues presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned."). As such, I do not believe this is an appropriate case upon which to base a new exception to the statute of frauds grounded in judicial estoppel.

I would also note that this Court has been reluctant in the past to recognize exceptions to the statute of frauds. The Court has repeatedly rejected exceptions, like the part performance doctrine, even when they are embraced by the vast majority of jurisdictions. *E.g.*, *Grantham v. Grantham*, 205 N.C. 363, 366, 171 S.E. 331, 333 (1933) ("The doctrine of part performance . . . has no place in our jurisprudence and will not dispense with the necessity of a writing," and "a parol contract for the conveyance of land cannot be enforced to the extent of decreeing a specific execution of the agreement." (citations omitted)); John N. Hutson, Jr. & Scott A. Miskimon, *North Carolina Contract Law* § 4-34, at 358 (2001) ("North Carolina is one of three states that does not recognize part performance as an exception to the statute of frauds." (footnote omitted)). Adopting this new exception on this record, particularly such a broad exception, appears inconsistent with our historical respect for the statute of frauds and is thus troubling.

Furthermore, it appears premature to apply this newly-created exception to these parties in that a number of key factual matters are in dispute. Here, evidence showed that if there was an offer by the city on 14 November 2007 (during a recess in the trial), it was conditional. Just before the trial court asked plaintiff if the arrangement was his agreement, the city's attorney informed the trial court and the

**POWELL v. CITY OF NEWTON**

[364 N.C. 562 (2010)]

parties that the city council still had to vote on whether to approve the agreement, that their next meeting was not until 11 December 2007, and that he would "go ahead and get" the money to plaintiff's then-attorney, but the money could not be "disburse[d]" to plaintiff "until everything is signed." Some of these conditions may have been satisfied, but the record here does not reflect that they were.

The majority here concludes that the record establishes that the city council voted to approve the agreement because "funds in the amount specified by the agreement were transferred into" the trust account of plaintiff's then-attorney and because the trial court commented during the 5 May 2008 hearing that the city council had approved the agreement. The majority also concludes that the city council voted to approve the settlement agreement before plaintiff rejected it, thereby satisfying the conditions. Given the city attorney's statement in court that he would transfer the monies to plaintiff's attorney's trust account to await the vote and signing, I do not believe that the transfer of funds alone resolves these issues. Though the trial court's 27 May 2008 order contains a statement that these monies were deposited into the trust account of plaintiff's then-attorney, neither this pronouncement nor anything else in the record establishes the date on which the monies were deposited or whether the city council voted to accept the agreement at all, let alone when. Further, the record neither indicates the basis for the trial court's comment about the city council nor supports it. And, in any event, the trial court's conclusory statement, made in May 2008, still does not establish that the city council approved the agreement, allegedly reached on 14 November 2007, within the relevant time period. Because these factual issues are still unresolved, I believe a remand is most appropriate.

Even though plaintiff testified under oath, as did other witnesses, including his attorney at the time, it does not appear that the trial court's 27 May 2008 order was based on this evidence. The record and the order itself indicate the order is based on the arguments of respective counsel and a few pages of transcript from the 14 November 2007 in-court exchange. During the 5 May 2008 hearing, when plaintiff proffered evidence regarding what had transpired on 14 November 2007 and thereafter, the trial court had already ruled and indicated that such presentation was not "necessary." The sworn testimony was then presented and recorded by the court reporter "in the absence of" the judge. Counsel for the respective parties took testimony from plaintiff's trial attorney, from third-party defendant

Shaver's trial attorney, and from plaintiff. Under oath, plaintiff stated, *inter alia*, that he has a hearing problem, and because of this, could not hear much of what was said regarding the settlement agreement on 14 November 2007 and did not understand that it required him to deed over his land to the city. Plaintiff's trial counsel testified basically that he believed plaintiff understood the terms of the agreement on 14 November 2007 and reluctantly agreed to them. At the very least, this testimony raises issues of fact about the existence of an agreement and what plaintiff understood it to involve. In my view, the trial court should resolve these factual issues after hearing, or at least reviewing, the testimony.

For these reasons I would reverse the Court of Appeals and instruct that court to remand this case to the trial court to conduct further proceedings, as this Court ordered in *Whitacre P'ship*, 358 N.C. at 37-39, 591 S.E.2d at 894-95. Thus, I respectfully dissent.