**Motion for Rehearing Granted in Part and Denied in Part; Affirmed in Part and Reversed and Remanded in Part; Opinion and Concurring Opinions filed October 16, 2012 Withdrawn, and Substitute Opinion and Substitute Concurring Opinions filed December 28, 2012.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

### NO. 14-10-00604-CV

## 2001 TRINITY FUND, LLC, Appellant

## V.

## CARRIZO OIL & GAS, INC., Appellee

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2008-05053**

# SUBSTITUTE CONCURRING OPINION

I join sections IV.B., IV.C., IV.D., and IV.E. of Justice Frost's Substitute Opinion (addressing issues pertaining to the quantum-meruit claim, the promissory-estoppel claim, attorney's fees, and the appropriate appellate judgment). I write separately because I disagree with section IV.A. of Justice Frost's Substitute Opinion (the "plurality") pertaining to appellant's second issue.

Specifically, I would hold, as a matter of law, the parties did not intend to continue the Barnett Shale Participation Agreement ("BSPA") by using electronic communications, as prescribed under the Texas Uniform Electronic Transactions Act ("UETA"). Accordingly, the trial court should not have submitted Jury Question No. 1 because the various contractual documents unambiguously establish that the parties did not agree to continue the BSPA.

In what may simply be a semantically different approach, the plurality suggests appellant's second issue presents a legal-sufficiency-of-the-evidence point. Appellant's second issue is stated as follows: "The trial court should not have submitted [appellee's] breach of contract relating to the BSPA to the jury." In this dispute over contract formation, the court must first determine whether there is ambiguity in the purported contract language, and if there is no ambiguity, an analysis pertaining to legal sufficiency of the evidence to support the jury's affirmative answer to Question No. 1 is unnecessary because the trial court simply should not have submitted the question. *See XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 627 n.2, 632 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (determining appellant's contention that trial court erred by submitting jury question was not a legal-sufficiency issue and holding trial court did err by submitting question because contract was unambiguous).

Appellant's trial counsel objected to submission of Question No. 1 "in its total on the fact that the evidence demonstrates that an agreement was not reached post termination of the [BSPA]." Accordingly, appellant preserved for appeal whether, as a matter of law, the parties agreed to continue with the BSPA. In considering appellant's contention that no enforceable contract was formed, our first task must be to determine whether the transactional or contracting language

used by the parties is ambiguous. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996).[1]

The plurality acknowledges that "the negotiations, alleged offers, and alleged acceptances in the case under review are in writing and the language of these writings is unambiguous." I agree. The plurality concludes: "whether the parties agreed to the Alleged Agreement is a question of law." I agree. Because the contract language in question is unambiguous, the focus should be on two questions of law which were erroneously submitted to the jury[2] as questions of fact: (1) whether the parties agreed to amend terms and conditions of the BSPA through electronic communications,[3] and (2) if so, whether unambiguous language in emails reflects mutual assent to continue the BSPA without a signed writing.

The plurality assumes that the parties agreed to amend terms and conditions of the BSPA through email communications. In describing an email sent by appellee's representative, the plurality opines that "under the unambiguous language of this proposal, the termination date in section 2.8(b) would not be removed . . . ." The plurality avoids the pivotal question of law—did the parties agree to be bound by their negotiations in electronic communications? I disagree

---

[1] Appellate courts should be reticent to disturb jury verdicts unless required by law. *See, e.g.*, *McWhorter v. Humphreys*, 161 S.W.2d 304, 308 (Tex. Civ. App.—Texarkana 1941, writ ref'd w.o.m.) (explaining court of appeals is "reluctant to disturb any jury verdict"); *see also Herbert v. Herbert*, 754 S.W.2d 141, 143 (Tex. 1988) (recognizing "the sanctity to which a jury verdict is entitled").

[2] The jury impliedly found that the parties agreed to continue and amend the BSPA by electronic means. Additionally, relative to the UETA the jury impliedly found that the parties executed or adopted a symbol associated with their respective emails with the intent to sign the emails.

[3] The plurality does not address appellant's argument that the evidence is legally insufficient to support the jury's finding that the parties agreed to amend the BSPA by electronic communications.

with this approach. For reasons outlined below, I would hold, as a matter of law, that the parties did not agree to be bound by electronic communications.

There is no patent or latent ambiguity[4] in section 9.11 of the BSPA: "This Agreement may not be modified or changed except by a written amendment signed by all Parties." There is no patent or latent ambiguity in section 9.12 of the BSPA: "No right hereunder shall be waived (and the express waiver of any right hereunder in one instance shall not be deemed a waiver of the same right in any other instance or of any similar or dissimilar right) except by an instrument in writing that is signed by the Party to be charged with such waiver and delivered to the Party claiming the benefit of such waiver."[5] Here, the plain language in the BSPA has a certain or definite legal meaning. When contracting parties engage in written communications that have a certain or definite legal meaning, there is no fact issue for determination by a jury. *See Coker v. Coker*, 650 S.W. 2d 391, 393–94 (Tex. 1983).

After determining there is no patent or latent ambiguity in relevant provisions of the BSPA, this court should focus on whether there is patent or latent ambiguity in relevant email communications. Appellee argues that the question of whether the parties agreed to conduct a transaction by electronic means is a fact issue which was properly submitted to the jury with appropriate instructions regarding application of the UETA, and appellant did not object to those

---

[4] The plurality does not explain the difference between patent and latent ambiguity. *DeClaris Assocs. v. McCoy Workplace Solutions, L.P.*, 331 S.W.3d 556, 562 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("An ambiguity in a contract may be said to be patent or latent. Patent ambiguity in a contract is ambiguity that is apparent on the face of the contract; latent ambiguity is ambiguity that only becomes apparent when a facially unambiguous contract is applied under particular circumstances.").

[5] Additionally, the parties seem to acknowledge that the BSPA involves conveyance of mineral interest, and all such agreements must be in writing. *See Vela v. Pennzoil Producing Co.,* 723 S.W.2d 199, 206 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.).

4

instructions. Appellee also contends the jury's affirmative answer to Question No. 1 must be upheld because appellant waived any objection to that portion of the charge. *See Osterberg v. Peca*, 12 S.W. 3d 31, 55 (Tex. 2000). However, appellee presumes the parties' mere use of electronic communications to negotiate an amendment to the BSPA creates a fact issue on whether they intended to enter into a binding agreement through email communications. To determine whether there is a fact issue regarding intent of the parties to be bound, we consider the plain meaning of words and phrases used in those emails. *See Lesikar v. Moon*, 237 S.W.3d 361, 367 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct. *See* Tex. Bus. & Com. Code Ann. § 322.005(b) (West 2009). Because the parties signed an agreement reflecting their mutual intent not to be bound by an amendment to the BSPA unless the amendment is in writing and signed by both parties,[6] we determine whether there is latent ambiguity relative to intent of the parties to amend the BSPA through subsequent electronic communications.

Appellee argues that the parties mutually agreed to amend the BSPA through electronic communications because the established rules of contract formation have been expanded by the UETA. *See id.* § 322.001 et seq. (West 2009 & Supp. 2012). However, the UETA does not supplant common law principles that govern

---

[6] I acknowledge that under the UETA a record may not be denied its legal effect solely because it is in electronic form, and, if a law requires a record to be in writing, an electronic record satisfies the law. *See* Tex. Bus. & Com. Code Ann. § 322.007(a)–(d). However, the essential inquiry is whether parties agreed to amend the BSPA through electronic communications. *See id.* § 322.005(b); *see also id.* § 322.007, comment 2.a. (West 2009) ("The requirements of [the general Texas statute of frauds] may now be met electronically *where the parties have agreed to conduct the transaction by electronic means*." (emphasis added)).

5

formation of contracts.[7]  In determining whether the parties had a meeting of the minds concerning modification of a contract, the focus is on what the parties did and said, not their subjective states of mind.  *Komet v. Graves*, 40 S.W.3d 596, 601 (Tex. App.—San Antonio 2001, no pet.).  Moreover, before email communications are binding and enforceable, the parties must agree to conduct a transaction by electronic means.  *See* Tex. Bus. & Com. Code Ann. § 322.005(b).

Admittedly, the plain meaning of words in the email communications reflect contract negotiations.  However, as required under the BSPA, the parties also attempted to amend the BSPA by drafting and forwarding written instruments to be signed by both parties.  The following chronology is instructive: (1) on December 14, 2007, appellant's representative sent an email to appellee's representative stating that his attorney would have "the agreement" ready by December 18, 2007; (2) on December 18, 2007, appellant's representative sent appellee a draft amendment to the BSPA, asking appellee's representative to review and edit; (3) appellee's representative responded that appellant's proposed agreement was under consideration and noted that the compensation specified was different from the amount previously specified by the parties; (4) sometime between December 19, 2007 and December 30, 2007, appellee sent appellant a draft amendment to the BSPA; apparently, this document was lost or is not in the appellate record; (5) on December 30, 2007, appellee sent appellant a different draft of a "First Amendment to Barnett Shale Participation Agreement" and requested that appellant disregard the previous draft; (6) subsequently, appellee's representative demanded that appellant's representative sign the proposed amendment to the BSPA by January 4, 2008; (7) thereafter, appellee forwarded a copy of the "First

---

[7] Whether an electronic record or signature has legal consequences is determined by this chapter and other substantive and applicable law.  *See* Tex. Bus. & Com. Code Ann. §§ 322.003(d) (West Supp. 2012); 322.005(e).

Amendment to Barnett Shale Participation Agreement," signed by appellee's representative; (8) appellant's representative never signed or returned the proposed amendment.

In sum, the following undisputed evidence establishes, as a matter of law, that the parties did not agree to amend the BSPA and continue business by waiving automatic and mandatory termination provisions: (1) the parties entered into a written agreement (BSPA) that involved exploration and production of mineral interest; (2) under the BSPA, the parties agreed that no amendments would be effective without a writing, signed by the parties; (3) subsequently, the parties engaged in email negotiations regarding an amendment to the BSPA; (4) in their email communications, the parties did not express any agreement to waive provisions pertaining to amendments to the BSPA or agree that they would be contractually bound by verbiage in electronic communications; (5) pursuant to requirements expressed in the BSPA, the parties exchanged multiple drafts of written amendments which they never jointly signed or executed.

This undisputed evidence, combined with the fact that the parties previously agreed any modifications would be in writing, conclusively establishes appellant's assertion that the parties did not waive the requirement of a signed writing to amend the BSPA. There is no language in any of the emails raising a fact issue regarding whether the parties waived the requirement of a signed writing or agreed that electronic communications were sufficient to bind the parties to a new contract or amend the BSPA. The chosen verbiage and multiple efforts to obtain signatures on a written or printed amendment negate any implication or inference that the parties agreed to be bound by their emails.

Notwithstanding application of the UETA to these facts, the parties plainly did not agree to amend and continue the BSPA without condition-precedent

language in section 2.8(b) terminating the contract for failure to timely remit sums due on October 19, 2007. We are cognizant of the fact that most individuals send and receive multiple emails every day. Consequently, courts should be hesitant to imply or infer an agreement to transact business or negotiate contracts electronically merely because emails were exchanged. *See Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 529–30 (Tex. App.—Fort Worth 2011, pet. filed).[8] In a sister jurisdiction where the parties' conduct and email communications reflected an understanding that a physical signature was required because of the statute of frauds, the North Carolina Supreme Court concluded that the parties did not agree to use electronic signatures in lieu of a physical signature to complete the transaction. *Powell v. City of Newton*, 703 S.E.2d 723, 727–28 (N.C. 2010). Under the unique facts of this case, there is no fact issue regarding intent of the parties to be bound by electronic communications.[9]

I would hold, as a matter of law that there was no "meeting of the minds" to use electronic communications to amend the BSPA and, thus, no agreement to amend or continue to BSPA. *Komet*, 40 S.W.3d at 601. Therefore, the trial court should not have submitted Question No. 1 to the jury, and there is no reason for this court to determine whether the evidence is legally sufficient to support the jury's affirmative finding relative to Question No. 1. *See Daewoo Shipbuilding & Marine Eng'g, Co., v. Ikanco Inc.*, 376 S.W.3d 229, 233 (Tex. App.—Houston [14th Dist.] 2012, pet. granted, judgm't vacated w.r.m.) ("If, after the rules of

---

[8] *See also* Tex. Bus. & Com. Code Ann. § 322.005 comment 2. ("While [UETA] removes barriers to the use of electronic records and electronic signatures, it does not confer an automatic right on one party to conduct a transaction by electronic means. In consensual transactions, *e.g.*, agreements, both parties must agree to conduct the transaction by electronic means.").

[9] This holding is confined to the facts of this case. There may be other fact patterns in which a jury issue arises regarding intent of the parties to be bound by emails, without specific language reflecting mutual assent to be bound.

construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law."); *Jamison*, 194 S.W.3d at 627 n.2, 632. Accordingly, I concur in the judgment only as to section IV.A. of Justice Frost's Substitute Opinion, and I do not join Judge Jamison's Substitute Concurring Opinion.


/s/    Charles W. Seymore
       Justice

Panel consists of Justices Frost, Seymore, and Jamison. (Seymore, J., concurring) (Jamison, J., concurring).